UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

CHESTER LARVELL STARNES, JR.,

                Petitioner,

v.

SHIRLEE HARRY,

                Respondent.

_____/

Case No. 1:17-cv-209

Honorable Gordon J. Quist

## **REPORT AND RECOMMENDATION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Chester Larvell Starnes, Jr., is incarcerated with the Michigan Department of Corrections at the Earnest C. Brooks Correctional Facility in Muskegon Heights, Michigan. On November 6, 2014, an Ingham County Circuit Court jury found Petitioner guilty of assault with intent to commit criminal sexual conduct involving penetration, MICH. COMP. LAWS § 750.520g(1), and assault by strangulation, MICH. COMP. LAWS § 750.84(1)(b). On January 28, 2015, the court sentenced Petitioner as a habitual offender-fourth offense, MICH. COMP. LAWS § 769.12, to concurrent prison terms of 25 years to 37 years, 6 months.

On March 3, 2017, Petitioner filed his habeas corpus petition raising four grounds for relief, paraphrased as follows:

    I.      Verdicts of guilty based upon insufficient evidence constituted a denial of due process.

II.    Imposition of twenty-five year minimum sentences upon unsubstantiated finding that Petitioner was a fourth habitual felony offender constituted reversible error.

III.    Prosecutor failed to correct false testimony of its star witness.

IV.    Ineffective assistance of appellate counsel in that he failed to master the trial record.

(Pet., ECF No. 1, PageID.3-5.)  Respondent has filed an answer to the petition (ECF No. 9), stating that the grounds should be denied because issue I is without merit, issues II and III are procedurally defaulted and without merit, and issue IV is unexhausted and without merit.  Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are meritless.  Accordingly, I recommend that the petition be denied.

## Discussion

I.    Factual allegations

On November 4, 2014, Petitioner and his cousin Tommeica both took the stand in the courtroom of Ingham County Circuit Court Judge Joyce Draganchuk.  (Trial Tr. II, ECF No. 10-4.)  Both testified regarding the events of Tuesday night, February 4, 2014.  Up to a point, their testimony was entirely consistent.  Both testified that Petitioner traveled to Tommeica's apartment in Ingham County, Michigan, that night.  (*Id.*, PageID.220-222, 249-250.)  Both testified that Petitioner brought marijuana for them to smoke.  (*Id.*)  Both testified that it was not the first time the two had gotten together for that purpose.  (*Id.*)  Both testified that Tommeica

packed the bong and they started smoking.  (*Id.*)  At that point, however, the stories diverge.

Tommeica testified that Petitioner was drunk when he arrived.  After she took a couple hits from the bong, Petitioner attacked her.  He choked her and stated his intention to force her to have sexual intercourse with him.  He succeeded in pulling down her pants.  She fought him; they wrestled.  Eventually, Tommeica, more than a foot shorter and one-hundred pounds lighter than Petitioner, secured Petitioner in a headlock.  Petitioner pushed her into the wall with sufficient force to dislodge all of the pictures hanging there.  She made a break for the front door, but Petitioner caught her and threw her in the bathroom.  In the bathroom, Petitioner positioned her on the sink and again began to choke her.  Petitioner exposed his penis.  In an attempt to gain an advantage, Tommeica grabbed Petitioner's penis and pretended to yield.  Instead, however, she ran to the kitchen and grabbed a butcher knife.  She approached Petitioner.  He retreated.  Tommeica again made an attempt to exit by the front door, but Petitioner blocked her path.  She grabbed her cell phone and fled out the back door.  She made it through the snow to her aunt's apartment.  Once inside at her aunt's house she called the police.  Tommeica testified that, in the tussle, her lip had been cut and bruised.  She also testified that Petitioner had hurt her arm.  Photographs taken by the police revealed marks on her neck from Petitioner's efforts to choke her.

According to Petitioner, Tommeica took more than two or three hits from the bong.  Things remained peaceful until Petitioner eventually headed to the bathroom.

As he came out of the bathroom, he caught Tommeica going through his pockets, apparently looking for money. Petitioner claims Tommeica got in his face. He became angry, grabbed her around the neck and pushed her. Tommeica's foot caught on the rug and she fell into the wall. Tommeica then asked Petitioner not to kill her. He was taken aback by that misinterpretation of the events. She demanded he leave. He left. He was stunned when the police arrested him some time later.

The jurors were instructed on the two crimes of which they convicted Petitioner; however, they were also instructed on the crime of assault and battery as a lesser included offense for both charges. (Trial Tr. III, ECF No. 10-5, PageID.302.) After deliberating for two and one-half hours, the jury asked to hear the testimony of Tommeica, her aunt, and Petitioner again. (*Id.*, PageID.311.) The court instructed them to rely on their memories and, if that failed, to narrow their request to something more focused that would not require rehearing almost the entire trial.

After another fifteen minutes of deliberation, the jury informed the court they had reached a verdict on the strangulation count, but were deadlocked on the assault with intent to commit criminal sexual conduct count. (*Id.*, PageID.313.) The trial court gave the jurors the deadlocked jury instruction. Less than two hours later, the jury returned its verdict.

At sentencing, Petitioner's habitual offender status was an important issue. That status, combined with the severity of Petitioner's crimes, took the minimum sentence outside of the guideline minimum range of 34 to 134 months, (Sentencing Information Reports, ECF No. 10-8, PageID.427, 429.) to a statutory mandatory

minimum of at least 25 years, MICH. COMP. LAWS § 769.12.   Although Petitioner convinced the court that a prior murder conviction had been set aside, the court concluded that Petitioner had failed to demonstrate that another count from that same criminal incident had been set aside.   Accordingly, Petitioner was sentenced as a habitual offender-fourth offense.  (Sentencing Tr. II, ECF No. 10-7.)

Petitioner, with the assistance of counsel, directly appealed his convictions and sentences.   In the brief Petitioner filed with the assistance of counsel, he raised his first two habeas issues.  (Appellant's Br., ECF No. 10-8, PageID.382.)   Petitioner raised his third and fourth habeas issues in the appellate court by way of a *pro per* brief.  (Appellant's Standard 4 Br., ECF No. 10-8, PageID.485, 495.)  By opinion dated May 12, 2016, the Michigan Court of Appeals affirmed Petitioner's convictions and sentences.  (Mich. Ct. App. Op., ECF No. 10-8, PageID.356.)

Petitioner then filed an application for leave to appeal in the Michigan Supreme Court raising the same issues he raised in the Michigan Court of Appeals, plus one new issue regarding the scoring of the sentencing guidelines.  (App. for Leave to Appeal, ECF No. 10-9, PageID.510-513; Mot. to Supplement, ECF No. 10-9, PageID.601-604.)   The Michigan Supreme Court denied leave by order entered December 28, 2016.

When Petitioner raised his sentencing guidelines argument in the supreme court, he also raised it by motion in the trial court.   The trial court denied Petitioner's motion without prejudice pending completion of his direct appeal.  (Ingham Cnty. Cir. Ct. Order, ECF No. 10-10, PageID.613-615.)   Petitioner renewed his motion after the

Michigan Supreme Court denied leave.  The trial court denied the motion by opinion and order entered March 1, 2017, concluding that Petitioner had raised the issue in the Michigan Supreme Court and that the supreme court had denied relief.  (Ingham Cnty. Cir. Ct. Op. & Order, ECF No. 10-13.)

Two days later, Petitioner filed his habeas petition in this Court.

II.    AEDPA standard

The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  In

determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655. Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

III.    Sufficiency of the Evidence

Petitioner argues that there was insufficient evidence to convict him of assault with intent to commit criminal sexual conduct or assault by strangulation. The foundation of his argument is a claim that Tommeica gave so many inconsistent accounts of that evening that her testimony is inherently incredible.

A Section 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* Issues of credibility may not be reviewed by the habeas court under this standard. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993). Rather, the habeas court is

required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case:  First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008).   This standard erects "'a nearly insurmountable hurdle'" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds.  *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2008) (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

In resolving Petitioner's sufficiency claim, the Michigan Court of Appeals applied the following standard:

> Due process requires that evidence of every element of a crime be proven beyond a reasonable doubt in order to sustain a criminal conviction. *People v Hampton*, 407 Mich 354, 366; 285 NW2d 284 (1979), citing *In re Winship*, 397 US 358, 364; 90 S Ct 1068; 25 L Ed 2d 368 (1970).  In determining whether the prosecution has presented sufficient evidence to sustain a conviction, an appellate court is required to take the evidence in the light most favorable to the prosecution to ascertain whether a rational trier of fact could find the defendant guilty beyond a

> reasonable doubt.  *People v Tennyson*, 487 Mich 730, 735; 790 NW2d 354
> (2010).  Direct and circumstantial evidence, as well as all reasonable
> inferences that may be drawn, when viewed in a light most favorable to
> the prosecution, must be considered to determine whether the evidence
> was sufficient to support the defendant's conviction.  *People v
> Hardiman*, 466 Mich 417, 429; 646 NW2d 158 (2002).

(Mich. Ct. App. Op., ECF No. 10-8, PageID.358 (footnote omitted).)  The court of

appeals relied upon *People v. Tennyson*, which in turn relies upon *People v. Hardiman*

as authority for the appropriate standard.  The *Hardiman* court, in turn, relied upon

*People v. Wolfe*, 489 N.W.2d 748 (Mich. 1992).  The *Wolfe* court acknowledged that

the Michigan courts were simply applying the *Jackson v. Virginia* standard.  *Wolfe*,

489 N.W.2d at 750.  Thus, at a minimum, it appears the Michigan Court of Appeals

applied the correct standard.

Moreover, the court of appeals applied the standard correctly.  It identified the

elements of both offenses and then considered the evidence to assess whether,

construed in a light most favorable to the prosecution, the prosecution had proven

those elements beyond a reasonable doubt.  (Mich. Ct. App. Op., ECF No. 10-8,

PageID.358-359.)  The state appellate court reasoned:

> Here, defendant does not contest that any specific element of
> either crime was unsupported by sufficient evidence, but argues that
> Martin's testimony was not credible, whereas defendant's version of
> events was accurate.   However, in a sufficiency challenge, "[a]n
> appellate court does not determine credibility; it merely ensures that the
> jurors were given the chance to hear the admissible evidence necessary
> to make their decision."  *People v McGhee*, 268 Mich App 600, 637; 709
> NW2d 595 (2005).  Jurors who view the testimony of the witnesses "are
> in a superior position to determine the credibility" of the witnesses.
> *People v Wright*, 44 Mich App 111, 116; 205 NW2d 62 (1972).  Thus, this
> Court will "not interfere with the jury's role of determining the weight
> of the evidence or the credibility of witnesses."  *People v Ortiz*, 249 Mich
> App 297, 300-301; 642 NW2d 417 (2001) (citations omitted).

(Mich. Ct. App. Op., ECF No. 10-8, PageID.359.)  The Michigan Court of Appeals' determination was entirely consistent with, and not contrary to or an unreasonable application of, *Jackson v. Virginia*; accordingly, Petitioner is not entitled to habeas relief on his sufficiency challenge.

The Michigan Court of Appeals went on to consider Petitioner's argument regarding the credibility of Tommeica's testimony as a great-weight-of-the-evidence challenge.  (*Id.*, PageID.359-360.)  The court rejected that challenge as well. Petitioner invites this Court to review that result.

The assertion that the verdict was against the great weight of the evidence does not state grounds for habeas corpus relief.  The extraordinary remedy of habeas corpus lies only for a violation of the Constitution.  28 U.S.C. § 2254(a).  The Michigan courts apply the great-weight-of-the-evidence standard to determine whether to grant a new trial.  *See People v. Lemmon*, 576 N.W.2d 129, 137 (Mich. 1998).  This question is distinct from the due-process guarantee offended by insufficient evidence and "does not implicate issues of a constitutional magnitude."  *Id.* at 133 n.8.  As a consequence, a "weight of the evidence claim" is purely a matter of state law and is not cognizable on habeas review.  *See* 28 U.S.C. § 2254(a); *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) ("[I]t is only noncompliance with federal law that renders a state's criminal judgment susceptible to a collateral attack in the federal courts."); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); *accord Chatman v. Warden Ross Corr. Inst.*, No. 2:10–cv–

11

1091, 2013 WL 1663919, at *10 (S.D. Ohio Mar. 26, 2013); *Underwood v. Berghuis*, No. 1:08–cv–642, 2011 WL 693 8471, at *15 (W.D. Mich. Aug. 8, 2011) ("Since a 'weight of the evidence claim' is purely a matter of state law, it is not cognizable on habeas review.").  Because this Court lacks authority to review a state court's application of its own law, the state-court determination that the verdict was not against the great weight of the evidence is final.

IV.    Twenty-five Year Minimum Sentence

Petitioner next argues that his due process rights were violated because he was sentenced based on inaccurate information.  A sentence may violate due process if it is based upon material "misinformation of constitutional magnitude." *Roberts v. United States,* 445 U.S. 552, 556 (1980), *quoted in Koras v. Robinson,* 123 F. App'x 207, 213 (6th Cir. Feb. 15, 2005); *see also United States v. Tucker,* 404 U.S. 443, 447 (1972); *Townsend v. Burke,* 334 U.S. 736, 741 (1948).  To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence.  *Tucker*, 404 U.S. at 447; *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984); *Koras,* 123 F. App'x at 213 (quoting *United States v. Stevens,* 851 F.2d 140, 143 (6th Cir. 1988)).  A sentencing court demonstrates actual reliance on misinformation when the court gives "explicit attention" to it, "found[s]" its sentence "at least in part" on it, or gives "specific consideration" to the information before imposing sentence.  *Tucker*, 404 U.S. at 444, 447.

12

The information Petitioner challenges as inaccurate is the prosecutor's proof of his third prior felony.  At the second sentencing hearing, the prosecutor offered a certified record from the Cook County, Illinois clerk of the court.  (Sentencing Tr. II, ECF No. 10-7, PageID.336.)  The record disclosed the following convictions:  (1) June 28, 1985, convictions for aggravated criminal sexual assault, armed robbery, aggravated kidnapping, and pandering; (2) a January 28, 1993, conviction for unlawful use of a weapon by a felon; and (3) June 28, 1995, convictions for murder and aggravated battery with a firearm.  (*Id.*, PageID.336-339; Cook Cnty. Records, ECF No. 10-8, PageID.431-435.)  The presentence investigation report indicated that the murder conviction had been set aside.  (Sentencing Tr. II, ECF No. 10-7, PageID.339.)  The prosecutor acknowledged as much.  (*Id.*, PageID.336.) Nonetheless, the trial court counted the aggravated battery with a firearm conviction because there had been no showing that the aggravated battery conviction had been set aside.  (*Id.*, PageID.339-340.)  Thus, there can be no question that the trial court relied upon that felony conviction in imposing sentence.

The Michigan Court of Appeals concluded that Petitioner's challenge to his sentence did not warrant any relief:

> Defendant argues that there was no documentation provided regarding the aggravated battery with a firearm conviction and that the trial court therefore wrongfully concluded that it was still valid.  We note that defendant's conviction for aggravated battery with a firearm was not in fact overturned.  In *People v Cooper*, 194 Ill 2d 419, 438; 743 NE 2d 32 (2000), the Illinois Supreme Court affirmed the appellate court's decision reversing defendant's murder conviction and expressly affirmed defendant's conviction for aggravated battery with a firearm.

.  .  .

13

Here, the trial court accepted defendant's correction, as well as the prosecution's report, that defendant's murder conviction had been overturned, and did not include that conviction in its calculation. However, trial court noted that the PSIR stated that the murder conviction, but not the aggravated battery conviction, had been overturned. There is a presumption that the information contained in the PSIR is accurate unless the defendant raises an effective challenge. *People v Grant*, 455 Mich 221, 233-234; 565 NW2d 389 (1997). Here, defendant stated that he had no corrections to the PSIR. Moreover, the record includes a certified Cook County Order of Sentence and Commitment to the Illinois Department of Corrections, dated June 28, 1995, that listed defendant's convictions for murder and aggravated battery with a firearm. According to MCL 769.13(5)(a),(d), and (e), "[t]he existence of a prior conviction may be established" by, among other methods, "[a] copy of a judgment of conviction," "[i]nformation contained in a presentence report," and "[a] statement of defendant."

Defendant argues that there was no proof that defendant's conviction for aggravated battery with a firearm had not also been set aside, and that the trial court relied on speculation that it had not been set aside. However, the Illinois order of sentence and the PSIR lists the offense as valid and, unlike the murder conviction, there was no argument that the aggravated battery with a firearm conviction had been overturned on appeal. Defendant did not argue or establish that the aggravated battery with a firearm conviction was inaccurate. That the murder conviction was reversed was not evidence that the aggravated battery with a firearm conviction was reversed. Thus, given the documentation provided to the trial court, and the acquiescence of defendant, the trial court properly excluded defendant's murder conviction and properly included defendant's conviction for aggravated battery with a firearm as a prior felony. It was not an abuse of discretion for the trial court to find that defendant was previously convicted of the felony of aggravated battery with a firearm, which constituted a third previous felony conviction and provided the basis for sentencing as a fourth habitual offender.

(Mich. Ct. App. Op., ECF No. 10-8, PageID.361-362.)

Although the Michigan Court of Appeals relied on state law, its determination does not run afoul of clearly established federal law. Under clearly established

14

federal law, as under state law, it is Petitioner's obligation to show that the information before the sentencing court was false.  He has utterly failed to make that showing.  Instead, the uncertainty that dogged the trial court's determination at the sentencing hearing has been resolved.  The third conviction, the conviction upon which the trial court relied to trigger the 25-year mandatory minimum sentence, had been affirmed by the Illinois appellate courts.  (Ill. Op, ECF No. 10-8, PageID.455-470.)  Petitioner most certainly was aware of that fact when he made his arguments in the Michigan appellate courts and in this Court.

Petitioner is not entitled to habeas relief on this issue.

V.    Perjurious Testimony

The remaining arguments were raised for the first time in Petitioner's pro per brief in the Michigan Court of Appeals.  Petitioner contends his trial was unfair because the prosecutor knew Tommeica's testimony to be false yet failed to correct it. The Supreme Court repeatedly has recognized that "deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with 'rudimentary demands of justice.' "  *Giglio v. United States*, 405 U.S. 150, 153 (1972) (quoting *Mooney v. Holohan*, 294 U.S. 103, 112 (1935)); *see also Napue v. Illinois*, 360 U.S. 264, 269 (1959) ("[A] conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment.").  To establish such a claim, Petitioner must show "(1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false." *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989) (citations

omitted).  *See also Coe v. Bell*, 161 F.3d 320 (6th Cir. 1998).  Petitioner bears the burden of demonstrating that the testimony was actually perjured.  *Lochmondy*, 890 F.2d at 822.  "[M]ere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony."  *Id.*

Petitioner contends that Tommeica testified falsely at trial that Petitioner was drunk as demonstrated by her testimony at the preliminary examination that Petitioner did not drink that night.  (Appellant's Standard 4 Br., ECF No. 10-8, PageID.488-490.)  Petitioner argues that Tommeica provided additional false testimony including testimony that: Petitioner choked her and pulled her hair; Petitioner took her head and attempted to hit it against the mirror; and Tommeica testified that Petitioner exposed himself, but could not say whether he was circumcised.  (*Id.*, PageID.494-495.)

The Michigan Court of Appeals considered Petitioner's challenges under the following standards:

> "A State may not knowingly use false evidence, including false testimony, to obtain a tainted conviction." *People v Smith*, 498 Mich 466, 475-476; 870 NW2d 299 (2015), quoting *Napue v Illinois*, 360 US 264, 269; 79 S Ct 1173; 3 L Ed 2d 1217 (1959).  The prosecution has a constitutional obligation to report when a government witness lies under oath because the Due Process Clause of the Fourteenth Amendment guarantees that "criminal prosecutions must comport with prevailing notions of fundamental fairness." *People v Herndon*, 246 Mich App 371, 417; 633 NW2d 376 (2001).  "It is inconsistent with due process" for the prosecution to fail to correct false testimony from a prosecution witness, even if the prosecution did not solicit the false testimony.  *People v Wiese*, 425 Mich 448, 453-454; 389 NW2d 866 (1986), citing *Giglio v United States*, 405 US 150; 92 S Ct 763; 31 L Ed 2d 104 (1972).  The prosecution has a duty to correct false evidence, and Michigan courts recognize that "the prosecutor may not knowingly use false testimony to obtain a conviction." *Herndon*, 246 Mich App at 417.

16

The duty to correct the false testimony of a witness presents when the false testimony appears. *Wiese*, 425 Mich at 455, citing *Napue*, 360 US at 269. The prosecution must correct false testimony impacting the credibility of the witness because a defendant's guilt or innocence may depend on the jury's credibility determinations. *Wiese*, 425 Mich at 454, citing *Napue*, 360 US at 269. Failure to correct false testimony requires reversal if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury. *People v Canter*, 197 Mich App 550, 568; 496 NW2d 336 (1992), citing *Giglio*, 405 US at 154; *Wiese*, 425 Mich at 454.

(Mich. Ct. App. Op., ECF No. 10-8, PageID.363.) The appellate court relied on state

authorities that, in turn, relied on clearly established federal law.

The Michigan Court of Appeals applied the standards as follows:

Defendant cites as false Martin's statements that defendant was intoxicated when he arrived at her home, and that they discussed what he had been drinking. He also asserts that she falsely described his intoxicated state. Defendant states that this testimony was false because Martin testified at the preliminary examination that "[h]e drinks. But, he did not drink that night." However, defendant has not established that the trial testimony was false, or that the prosecution knew the trial testimony to be false. Although Martin's trial testimony may be seen as contradictory from her preliminary examination testimony, Martin was not directly asked during the preliminary examination whether defendant was intoxicated. During the preliminary examination, Martin was asked what happened after defendant arrived and she was sitting on the couch. Martin then testified that she smoked marijuana that defendant had provided, but that she was not drinking, and that defendant was not smoking marijuana and was not drinking that night. Thus, Martin may have been saying that defendant did not drink while with her, which was not contradictory to her trial testimony that he appeared intoxicated on arrival.

In *Smith*, 498 Mich at 476, citing *United States v Martin*, 59 F 3d 767, 770 (CA 8, 1995), the Court noted that "not every contradiction is material" and "the prosecutor need not correct every instance of mistaken or inaccurate testimony." The "crucial inquiry for due process purposes" concerns "the effect of a prosecutor's failure to correct false testimony." *Smith*, 498 Mich at 476 (emphasis in original). The Court, in Smith, warned that it is particularly in contrast to due process where

17

the prosecution reinforces and capitalizes on false testimony.  *Id*. (citation omitted).  Here, defendant has not demonstrated that Martin's testimony that he arrived intoxicated was false.  Additionally, the prosecution did not rely on evidence of defendant's intoxication (which was not an element of either offense) to demonstrate his guilt, and did not mention defendant's intoxication in closing argument.

(Mich. Ct. App. Op., ECF No. 10-8, PageID.363-364.)  The court of appeals determined that Petitioner had failed to demonstrate that Tommeica's testimony was false or that the issue of Petitioner's intoxication was material.  Those determinations are not unreasonable on this record.

With respect to Petitioner's remaining claims of perjured testimony, the court of appeals considered only the adequacy of Petitioner's demonstration of falsity:

Defendant also states that several of Martin's statements at trial were lies that the prosecution failed to correct.  Defendant points to testimony that he pulled Martin's hair and that he tried to hit her head on the bathroom mirror.  However, he does not offer any proof or argument regarding the alleged falsity of these statements or whether the prosecution knew them to be false.  Additionally, defendant mentions Martin's preliminary examination testimony that she could not say whether defendant was circumcised; he maintains that this was a false statement or evidence that Martin lied, because she said that she had grabbed his penis in a lighted room.  However, neither attorney asked Martin at trial about her preliminary examination testimony or whether defendant was circumcised, and Martin did not testify regarding the appearance of defendant's penis at trial and did not testify that defendant was or was not circumcised and therefore did not provide any testimony in contradiction of her preliminary examination testimony.  Thus, defendant has not demonstrated that Martin provided perjured testimony that the prosecutor failed to correct.  We further reject any suggestion that Martin's inability to recall one physical detail about defendant during a prolonged and intense encounter indicates that her testimony was false and the prosecution knowingly relied upon such falsity.  *Herndon*, 246 Mich App at 417.

(Mich. Ct. App. Op., ECF No. 10-8, PageID.364.)

The trial court's factual determinations, on this record, are eminently reasonable.  Moreover, Petitioner has failed to demonstrate that the Michigan Court of Appeals rejection of his prosecutorial misconduct claim is contrary to, or an unreasonable application of, *Giglio* or *Napue*.  Accordingly, Petitioner is not entitled to habeas relief on this claim.

VI.    Ineffective Assistance of Appellate Counsel

Finally, Petitioner claims that his appellate counsel rendered constitutionally ineffective assistance because he failed to raise the perjurious testimony issue considered above.  In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel:  (1) did counsel's performance fall below an objective standard of reasonableness; and (2) did counsel's deficient performance prejudice the defendant resulting in an unreliable or fundamentally unfair outcome.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.

The *Strickland* standard applies to appellate counsel as well as trial counsel; but, an appellant has no constitutional right to have every non-frivolous issue raised on appeal.  "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of

19

effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)).  To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 689.  As the Supreme Court recently has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another.  *Smith v. Robbins*, 528 U.S. 259, 289 (2000).  In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id.*

Moreover, when a federal court reviews a state court's application of *Strickland* under Section 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington,* 562 U.S. at 105 (citing *Knowles v. Mirzayance,* 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow,* 571 U.S. 12, 13 (2013); *Cullen v. Pinholster,* 563 U.S. 170, 190 (2011); *Premo v. Moore,* 562 U.S. 115, 122 (2011).  In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk,* 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington,* 562 U.S. at 102).

The Michigan Court of Appeals made quick work of Petitioner's ineffective assistance claim:

A counsel's performance is deficient if it fell below an objective standard of professional reasonableness. *Jordan*, 275 Mich App at 667. Here, defendant argues that his appellate counsel was ineffective in failing to raise the issue of a failure to correct perjured testimony. "An appellate attorney's failure to raise an issue may result in counsel's performance falling below an objective standard of reasonableness if that error is sufficiently egregious and prejudicial." *People v Reed*, 198 Mich App 639, 646-467; 499 NW2d 441 (1993). However, appellate counsel is presumed to have functioned as a reasonable appellate attorney in selecting the issues presented. *Reed*, 449 Mich at 391; *People v Uphaus*, 278 Mich App 174, 186-187; 748 NW2d 899 (2008). "[A]ppellate counsel's decision to winnow out weaker arguments and focus on those more likely to prevail is not evidence of ineffective assistance." *People v Pratt*, 254 Mich App 425, 430-431; 656 NW2d 866 (2002), citing *Reed*, 449 Mich at 391. Because defendant was not able to demonstrate that Martin testified falsely or that the prosecution knew she testified falsely and failed to correct the testimony, it was a reasonable strategy to decline to raise an issue with no demonstrable merit. Defendant has not overcome the presumption that his appellate counsel made a sound strategic decision in declining to present this issue.

(Mich. Ct. App. Op., ECF No. 10-8, PageID.364-365.)

Although the state appellate court cited state authorities as the foundation for its ineffective assistance standard, the standard is entirely consistent with *Strickland*. Moreover, the determination that appellate counsel's decision to forego the perjurious testimony argument was a sound strategic decision is unassailable. As set forth in detail above, the argument is entirely without merit. The Sixth Circuit has held that "'counsel cannot be ineffective for a failure to raise an issue that lacks merit.'" *Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003) (quoting *Greer*, 264 F.3d at 676). *See also Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010). "Omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v.*

*Bagley*, 706 F.3d 741, 752 (6th Cir. 2013).   In short, Petitioner has failed to demonstrate that the court of appeals' rejection of his ineffective assistance claim is contrary to, or an unreasonable application of, *Strickland*.   Accordingly, he is not entitled to habeas relief on the claim.

## Certificate of Appealability

Unless a certificate of appealability is issued, an appeal of the denial of a habeas corpus petition may not be taken.  28 U.S.C. § 2253(c)(1).  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467.

I have examined each of Petitioner's claims under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must

limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

I find that reasonable jurists would not conclude that this Court's denial of Petitioner's claims is debatable or wrong.

### Recommended Disposition

For the foregoing reasons, I recommend that the habeas corpus petition be denied.  I further recommend that a certificate of appealability be denied.  *See Slack v. McDaniel*, 529 U.S. 473 (2000).

Dated:  March 15, 2018                          /s/ Phillip J. Green
                                                PHILLIP J. GREEN
                                                United States Magistrate Judge

### NOTICE TO PARTIES

ANY OBJECTIONS to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely and specific objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008).  General objections do not suffice.  *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).